# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff,**

v.                                  **Case No. 3:10cr101/MCR**

DENNIS M. CARONI, GERARD M.
DILEO, THEODORE G. AUFDEMORTE,
JR., and JOSEPH GEORGE PASTOREK, II,

      **Defendants**.

_____/

## ORDER

The defendants were indicted on or about September 22, 2010, and charged with a conspiracy to dispense controlled substances, resulting in one or more deaths, in violation of 21 U.S.C. § 841(b)(1)(C) and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I) and (h).[1]  The matter is set for trial beginning October 17, 2011.  Defendant Dennis M. Caroni has filed an omnibus motion *in limine* seeking to exclude the following evidence:

      1.      The first category of evidence Caroni seeks to exclude pertains to documents stemming from a separate indictment against Mark Artigues and Gerardo A. Klug and the subsequent trial of Klug, including a compact disc ("cd") containing files of patients Klug treated while employed at Chronic and Controlled Pain Clinics.[2]  Caroni argues that

---

[1]  The charges against Theodore G. Aufdemorte, Jr., were dismissed on motion of the government. *See* doc. 297.

[2]  According to Caroni's (*see* doc. 244), Mark Artigues and Kathy Landry were employees of Global Pensacola Pain Management, LLC ("Global Pensacola"), a clinic owned and operated by Caroni.  Caroni maintains that Artigues and Landry convinced him to close Global Pensacola shortly after it opened and then,

evidence regarding patients treated at Control Pain Management, LLC ("CPM") has no bearing on whether the defendants in this case conspired to act outside the usual course of medical practice and for other than legitimate medical purposes and that, even if it did, the probative value of such evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403.  Caroni also argues that the documents constitute inadmissible hearsay.[3]  In response, the government reiterates its position that CPM was the *de facto* successor to Global Pensacola and maintains that evidence that doctors at CPM were prescribing narcotic pain medication outside the usual course of medical practice and for other than legitimate medical purposes has a tendency to show that the defendants in this case conspired to establish clinics for that purpose.  Because the court has not heard evidence regarding the association, if any, between CPM and the defendants in this case, it cannot make a determination as to the relevancy of evidence pertaining to prescribing practices at CPM.  The government, therefore, shall make a proffer at the pretrial conference on September 16, 2011, as to the evidence it expects to introduce at trial regarding the defendants' associations with CPM and the court will defer ruling on the admissibility of evidence pertaining to the indictment and trial of defendants involved in CPM until that time.

2.      Caroni next argues that the proposed expert testimony of Dr. Robin Hammil-Ruth and Paul Doering should be excluded because it pertains solely to CPM and thus is irrelevant in this matter.  For the reasons set forth above, the court will defer ruling on the admissibility of the proposed expert testimony until it hears the government's proffer

---

without his knowledge or participation – or that of the other defendants, opened another pain management clinic, Control Pain Management, LLC ("CPM") (which the court  presumes is the same as Chronic and Controlled Pain Clinics, to which Caroni refers), in the same location.  Artigues and three doctors working at CPM were indicted on the similar charges as the defendants in this case.  Artigues and two of the doctors, Rogelio T. Martinez and Osler F. Rivas, pled guilty; the other doctor, Klug, proceeded to trial before the undersigned and was convicted by a jury on both counts charged in the indictment.

[3] Specifically, Caroni argues that the government will be unable to authenticate the documents and that the documents therefore cannot be admitted as admissions of a party opponent.  Caroni acknowledges that the documents at least arguably constitute business records, but insists that the documents are unreliable and that, in order for his rights under the Confrontation Clause to be protected, the documents would have to be authenticated by a suitable custodian of records who would be subject to cross-examination.

regarding the relationship between CPM and the defendants in this case.

3.      Third, Caroni seeks to exclude a video recording of a deposition he gave in connection with a civil lawsuit he filed against Artigues, Landry, and others involved in CPM.  According to Caroni, the deposition was taken during a very contentious period of the litigation, which impacted his demeanor, and after an overnight flight from Los Angeles during which he got no sleep, which impacted his behavior and appearance.  Caroni argues that there is no dispute in this matter regarding his involvement in Global Pensacola and that the deposition therefore is not necessary to prove that fact at trial.  To the extent the government intends to use the deposition for a purpose other than to prove Caroni's involvement in CPM, Caroni urges the court to require the government to introduce the transcript of the deposition rather than the video, arguing that the video is unfairly prejudicial and cumulative.  The government insists that the video is relevant – not only because it shows Caroni's knowledge and operation of Global Pensacola, but also because it will allow the jury to assess the credibility of Caroni's explanations of his involvement in CPM.   According to the government, the videotaped deposition is admissible under Fed. R. Evid. 801(d)(2)(A) as a statement of a party opponent and any issues pertaining to Caroni's demeanor and appearance go solely to the weight of the testimony rather than its admissibility.  The court agrees with the government and DENIES Caroni's motion to exclude the videotaped deposition.

4.      Caroni next seeks to exclude an empty case for a pornographic DVD found in the waiting room of one of the clinics involved in this case by federal agents conducting a search of the premises.  Caroni argues that the DVD case is both irrelevant and unfairly prejudicial and that, if it is allowed at trial, the government should be required to introduce all of the other, non-pornographic DVDs seized during the search.  The court finds that the DVD case is relevant, as it tends to show that the clinic was not being operated in a manner consistent with usual medical practice.  Caroni's counsel is free to admit the remaining DVDs seized during the search and also to argue to the jury the weight it should give the evidence.  Caroni's motion to exclude the DVD case thus is DENIED.

5. Caroni also seeks to exclude a CD containing a "video montage of photos" of Justin Naquin, a patient who was treated at one of Caroni's clinics, while Naquin was in an intensive care unit of a hospital following a drug overdose.  According to Caroni, the video includes comments by unknown individuals about Naquin and his drug use that have a "strong religious undercurrent . . . about how God's involvement with Naquin saved his life and soul."  Although Caroni acknowledges the relevancy of Naquin's treatment for a drug overdose, he argues that the video is inadmissible because it contains hearsay of a testimonial nature and its introduction at trial would violate his rights under the Confrontation Clause.  The government has advised that it intends to call both Naquin and his mother, who created the video, as witnesses at trial.  The government also disputes the testimonial nature of the video and argues that the Confrontation Clause would not be implicated in any event because it applies only to declarants who do not appear at trial. In the event the court concludes that the video contains impermissible hearsay, the government requests that it be permitted to introduce non-hearsay portions of the video in order to show Naquin's condition following his drug overdose.  Having not seen the video, the court cannot make a determination as to its admissibility.  The government, therefore, shall provide the court with a copy of the video so that it can view it prior to the pretrial conference, at which it will make a ruling on its admissibility.

6. The sixth category of evidence Caroni seeks to exclude relates to autopsy photographs of an individual the government alleges died as a result of an overdose of drugs prescribed by the defendants.  According to Caroni, while autopsy photos typically are admissible in homicide prosecutions to explain findings as to cause and manner of death, such photos should not be admitted in this case because there is no indication of a violent death or a need to establish a victim's identity.  The court disagrees and finds the photographs admissible to establish the identity of the victim and also to rule out other causes of death, such as blunt force trauma as a result of the car accident in which the victim was involved at or near the time of his death.  The court would also note that the government has advised that it does not intend to introduce all of the photographs or those that are the most gruesome.  Caroni's motion to exclude the autopsy photos, therefore, is

DENIED.

7.      Caroni further seeks to exclude testimony of former employees of the clinics regarding Caroni's personal drug use.  According to Caroni, such testimony is not linked in time and circumstances with the crimes charged in the indictment and, even if it was, it does not form an integral and natural part of an account of the crimes charged and thus is not inextricably intertwined with them and cannot be admitted as intrinsic evidence.[4] Caroni also argues that evidence of his drug use does not satisfy the requirements of Rule 404(b) and, therefore, cannot be admitted as extrinsic evidence.[5]   The government disagrees, arguing that evidence of Caroni's prior and contemporaneous drug use is inextricably intertwined with his intent to enter into a conspiracy to dispense controlled substances and that such evidence also is relevant to show intent, plan, and absence of mistake or accident with regard to Caroni's operation of the clinics, particularly considering the similarity between the narcotics he allegedly was using and those being prescribed by doctors at the clinics.  The court finds that, to the extent the alleged drug use occurred

---

[4]  "Evidence of uncharged criminal activities and prior bad acts generally is considered inadmissible extrinsic evidence under Rule 404(b)."  *United States v. Lewis*, 373 Fed. Appx. 930, 931 (11th Cir.  2010). "But evidence of uncharged crimes is not extrinsic under Rule 404(b) if it is (1) an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence about the charged offense."  *Id.*  "And an uncharged crime about the chain of events explaining the context, motive, and set-up of the crime properly is admitted if linked in time and circumstances with the charged crime or forms an integral and natural part of an account of the crime."  *Id.*

[5]  Although evidence of other crimes, wrongs, or acts may not be admitted to prove the character of a person in order to show that the person acted in conformity therewith, such evidence may be admitted under Rule 404(b) for other purposes, including proof of intent, knowledge, absence of mistake, and identity.  In determining whether to admit evidence under Rule 404(b), the court considers several factors.  *United States v. Saunders*, 2006 WL 2769535, at *1-2 (11th Cir. Sept. 27, 2006).

>       First, the evidence must be relevant to an issue other than the defendant's character;  Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act;  Third, the probative value of the evidence must not be substantially outweighed by the undue prejudice, and the evidence must meet the other requirements of Rule 403.

*Id.* at *2 (quoting *United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005), *pet. for cert. filed*, (Apr. 24, 2006) (No. 05-1355) (quoting *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995))).

Case No. 3:10cr101/MCR

prior, but within close proximity, to the opening of the clinics referenced in the indictment, it is relevant as to Caroni's motive in establishing the clinics – *i.e.*, to have access to prescription drugs – and forms an integral and natural part of the account of the crime; as such, it constitutes intrinsic evidence and is admissible.[6]  Evidence of prescriptions Caroni received from doctors employed by the clinics also is relevant as to Caroni's motive in establishing the clinics and forms an integral and natural part of the account of the crime; as such, it, too, will be admitted as intrinsic evidence.  Similarly, to the extent Caroni's alleged drug use occurred at one of the clinics or at such time that Caroni was under the influence while at the clinics, the court finds the evidence relevant to the issue of whether the clinics were being operated outside the usual course of medical practice and for other than legitimate medical purposes and thus admissible as intrinsic evidence.  The court also finds that any potential danger of unfair prejudice, confusion of the issues, or misleading the jury resulting from the admission of such evidence can be cured through cautionary instructions.

8.     The eighth category of evidence Caroni seeks to exclude is "wealth" evidence and any other evidence that appeals to class bias.  Caroni also requests that the court redact the forfeiture allegations from the indictment.  Although the government has agreed to redact the forfeiture allegations from the indictment, it intends to introduce evidence regarding the alleged proceeds Caroni received as a result of the conspiracy and the manner in which those proceeds were spent.  As the government acknowledges, "[u]se of a defendant's wealth to appeal to class bias can be highly improper and can deprive that defendant of a fair trial."  *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011) (internal marks omitted).   "But evidence of wealth or extravagant spending may be admissible when relevant to issues in the case and where other evidence supports a finding of guilt."  *Id.*  "Determining whether "wealth evidence" is intended to provoke class

---

[6]  In the event the government intends to introduce evidence of Caroni's drug use during a time connected only remotely to Caroni's opening of the clinics, such evidence would be extrinsic and admissible only under Rule 404(b).  In order to made a decision as to the admissibility of such evidence, the court will have to hear from the parties at the pretrial conference regarding the nature of the evidence and the purpose for which the government seeks to introduce it.

bias or to establish a fact in issue is often difficult." *Id.*   As the Eleventh Circuit has observed,

> [t]he line between statements that are "appeals to class prejudice [that] are highly improper and cannot be condoned" and statements regarding class that are "relevant to issues at hand" is not easily drawn. It is especially difficult to draw when an accused's motivation is at issue, and when, as here, the alleged motivation is financial.

*Id.* (quoting *United States v. Jackson–Randolph*, 282 F.3d 369, 377–78 (6th Cir.2002)). The court must consider the facts carefully in determining whether evidence of wealth is relevant and not unfairly prejudicial. *Id.*  In this case, the government seeks to introduce evidence of Caroni's wealth to show his motive for entering into the alleged conspiracies. Considering that Caroni is charged with conspiracy to dispense controlled substances and conspiracy to commit money laundering and admittedly earned a substantial amount of money through the pain management clinics at issue, the court finds that evidence of Caroni's wealth relevant is relevant to show motive and that its probative value outweighs any danger of unfair prejudice.  *See United States v. Hess*, 691 F.2d 984, 988 (11th Cir. 1982) (recognizing increase in personal wealth as goal of conspiracy); *see also  Bradley*, 644 F.3d at 1272 (noting that "[t]he district court ha[s] broad discretion to admit the Government's 'wealth evidence' so long as it aid[s] in proving or disproving a fact in issue" and that, "[c]onversely, the court's discretion to exclude evidence under Rule 403 is limited" and "the balance should be struck in favor of admissibility") (internal marks omitted). Accordingly, Caroni's motion to exclude evidence of wealth is DENIED.

9.      Finally, Caroni requests that the court enter an order prohibiting the government from using the phrase "pill mill" during trial.  As the government points out, the phrase "pill mill" is not a legal term and, instead, is commonly used by laypeople to describe certain types of pain management clinics.  The government anticipates that some of its witnesses – particularly the defendants' former patients – will use the phrase when describing the reputation of the clinics at issue in this case and in expressing their opinions as to the manner in which the clinics were operated and the reasons they visited them.

Lay witnesses are allowed to offer opinions based on their personal perceptions.  *See* Fed. R. Evid. 701.  And the court finds nothing inappropriate or unduly prejudicial about the phrase "pill mill."  *See United States v. Hazelwood*, 2011 WL 2565294, at *24 (N.D. Ohio June 27, 2011) ("The use of the phrase 'pill mill' is not much different than other words like 'drug organization,' 'drug house,' or 'stash house.'  They seek to characterize the nature of the allegedly illegal operation.").  The court therefore DENIES Caroni's motion to prohibit use of the phrase "pill mill" at trial.

For the reasons set forth above, Caroni's omnibus motion *in limine* (doc. 242) is DENIED in part and the court DEFERS RULING in part.

DONE AND ORDERED this 13th day of September, 2011.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**