**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                                                                               Case No. 3:10cr101/MCR

**DENNIS M. CARONI; GERARD M.
DILEO; THEODORE G. AUFDEMORTE,
JR. and JOSEPH GEORGE
PASTOREK, II,**

    **Defendants.**
_____/

**ORDER**

    Pending before the court is a motion to sever (doc. 380) filed by Dennis M. Caroni, joined by Pastorek, and the government's response in opposition to the motion (doc. 385). Caroni argues that his trial should be severed from that of his nontestifying co-defendant, Dr. Gerard M. Dileo, based on the court's pretrial decision to admit at trial a Consent Order, entered into between Dileo and the Louisiana State Board of Medical Examiners ("LSBME"), in which Dileo agreed to accept certain disciplinary action against his medical license and practicing privileges. The court concludes that it is now appropriate to reconsider the prior ruling in light of the evidence presented at trial thus far and the pending motion to sever.[1]

    The indictment charges that from January 2004 through February 2008, Caroni, Dr.

---

[1] On the first day of trial, Dileo moved the court to reconsider the admissibility of the Consent Order, which the court denied. Caroni then moved orally for a severance, and Pastorek orally joined the motion. The court denied the motion initially but subsequently entered an order vacating the ruling and permitting the defendants to file a written motion to sever. Caroni has now filed the pending written motion. Although Pastorek has not joined that motion in writing, the court will consider it with regard to Pastorek as well based on his oral motion joining in the request for a severance.

Case No. 3:10cr101/MCR

Dileo, Theodore G. Aufdemorte,[2] and Dr. Joseph George Pastorek, II, conspired to unlawfully dispense controlled substances as purported pain management treatment through "their clinics in Metairie and Covington, Louisiana, and Pensacola, Florida" (doc. 3, ¶ 12). The indictment alleges that in 2004, Caroni and Aufdemorte established a partnership, Global Pain Management, LLC ("Global"), which they operated and managed as pain management clinics under various names and at various locations in Metairie, Louisiana; that in 2004, Caroni, Aufdemorte and Dileo together established Global Northshore Pain Management Clinic, LLC ("Global Northshore), which they operated in Covington, Louisiana; and that in 2005, Caroni established Global Pensecola [sic] Pain Management, LLC ("Global Pensacola"), operated in Pensacola, Florida. The indictment further alleges that, in addition to Dileo's role in establishing Global Northshore with Caroni and Aufdemorte, Dileo worked as a physician at the Global and Global Northshore clinics.

Dileo signed an LSBME Consent Order (doc. 246-1) on March 11, 2008, which was the result of an LSBME investigation into his prescribing practices from 2004 through January of 2007, while he was working in the practice of pain management at Global clinics located in Jefferson and St. Tammany Parishes, Louisiana. By signing the LSBME Consent Order, Dileo admitted that the information obtained through that investigation constituted probable cause to believe that he had engaged in prescribing practices that would support the institution of administrative proceedings against him, and that proof of those facts would be grounds to suspend or revoke his medical license.[3] Dileo further agreed to pay a fine and accept a five-year probationary period on his Louisiana medical license. The Consent Order conditioned Dileo's right to resume the practice of medicine in Louisiana on strict compliance with several listed terms and conditions, and he was permanently prohibited from practicing in the area of pain management.

---

[2] The indictment against Aufdemorte was dismissed on motion of the government prior to trial (doc. 297).

[3] Dileo did not actually admit to any violations and argued that he entered into the Consent Order only to settle the matter. The Consent Order states that Dileo had informed the LSBME prior to being notified of these charges that he was moving to Florida permanently to pursue his practice in obstetrics and gynecology and did not intend to return to Louisiana to practice medicine.

Case No. 3:10cr101/MCR

This court previously ruled that the Consent Order would be admissible at trial against Dileo, with appropriate redactions, as an admission of a party opponent pursuant to Rule 801(d)(2)(A).  (Docs. 369 & 379).  Caroni had also filed a motion in limine regarding the admissibility of the Consent Order and other LSBME documents, arguing that, as to him, the documents were inadmissible and unduly prejudicial.  The court ruled that admission of the Consent Order would not result in unfair prejudice to Caroni because he could be protected by a limiting instruction and an appropriate redaction.  In a supplemental memorandum, Caroni argued in one sentence and without elaboration that admitting the Consent Order would violate his confrontation rights under *Bruton v. United States*, 391 U.S. 123 (1968).  The court noted in a footnote in the admissibility ruling that the Consent Order does not facially incriminate Caroni and concluded that, for this reason, *Bruton* was inapplicable.  (Doc. 369 at 4, n.3).

On the first day of trial, Caroni orally moved to sever on the basis of *Bruton*, and, in support of his argument, cited for the first time the Eleventh Circuit's case of *United States v. Schwartz*, 541 F.3d 1331, 1351 (11th Cir. 2008) (finding a codefendant's statement accusing a company owned and operated by the defendant of wrongful conduct impermissibly compelled an adverse inference of the defendant's guilt in light of the whole case),  *cert. denied*, 129 S. Ct. 1655 & 1921 (2009).  The court permitted him to file the pending written motion, in which he urges the court to sever arguing specifically that, in light of the government's whole case, admitting the Consent Order against Dileo would be so powerfully incriminating of Caroni that it would violate his Sixth Amendment right to confront witnesses.

The Consent Order has not yet been admitted into evidence but the trial is ongoing at this time.  The evidence thus far presents a theory of the case implicating both Caroni and Dileo as operators of the clinics.[4]  Dileo is not portrayed as a mere employee physician

---

[4] As to Pastorek, at this time the evidence implicates only his prescribing practices as an employee physician.  But, while the indictment does not allege that he helped establish any of the clinics, it does charge that all of the defendants were engaged in a conspiracy to unlawfully dispense controlled substances "through their clinics."  Whether he will be held out as an operator as well has yet to be seen; the trial record is not yet complete.

Case No. 3:10cr101/MCR

but as a physician partner of Caroni's who also controlled the clinics in both Louisiana and Florida. The evidence to date includes testimony of two patients, an office employee, experts, and two physicians who worked at the clinics, including Dr. Gerardo A. Klug, a physician at the Global Pensacola clinic who had no role in operating the clinics. Dr. Klug testified that he was recruited by Dr. Dileo and that Dileo trained him in the clinic's preferred prescribing practices at one of the Global clinics in Louisiana. Klug referred to Dileo as "our director." In view of Caroni's arguments in support of the motion to sever, and considering the evidence as a whole presented at trial thus far, the court finds it is necessary to reconsider the admissibility of the Consent Order in light of the other defendants' confrontation rights and the potential for prejudice in this joint trial.

The Sixth Amendment preserves a defendant's right to confront the adverse witnesses against him. *See* U.S. Const. amend. VI. The admission of a nontestifying codefendant's statement implicating another defendant in a joint trial violates the defendant's confrontation rights, and the impact of such a violation cannot be lessened by a limiting instruction. *See Bruton*, 391 U.S. at 137. However, if, considering the totality of the circumstances, the codefendant's statement can be redacted in a manner that does not identify the defendant and is not incriminating on its face but only when linked with other evidence, a limiting instruction may suffice to guard against a Confrontation Clause violation. *See Gray v. Maryland*, 523 U.S. 185, 192-95 (1998); *Richardson v. Marsh*, 481 U.S. 200, 208 (1987). In circumstances where a statement is not facially incriminating but needs to be linked to other evidence to implicate the defendant, no *Bruton* violation occurs unless the codefendant's statement, "in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." *Schwartz*, 541 F.3d at 1351. As discussed in *Schwartz* and *Richardson*, in determining whether the statement raises a constitutionally impermissible inference of guilt against a defendant, a court must consider the *kind* of inference compelled, not simply the fact of inference. *Id.* at 1350 (citing *Richardson*, 481 U.S. at 196).

In *Schwartz*, the nontestifying defendant's affidavit directly implicated a company of wrongfully mishandling the funds of its investors; because the evidence in its entirety

showed that the defendant, Schwartz, owned, operated, and controlled the company accused in the codefendant's affidavit, the Eleventh Circuit held that admitting the codefendant's affidavit violated Schwartz's rights under *Bruton* and the Confrontation Clause. Although Schwartz was not named in the affidavit, and an inference was required to find the affidavit inculpatory as to him, the court found that the evidence presented in the case compelled that inference and thus powerfully incriminated Schwartz. The evidence at trial showed that Schwartz controlled the company's day-to-day operations, directed the company's investment strategies, and had unilateral power over how the company used the investors' funds. *See id*. at 1352. Additionally, the government had referred to this nontestifying codefendant's affidavit to demonstrate the evidentiary link. The court held that the evidence as a whole compelled a reasonable person to infer Schwartz's guilt from the affidavit and, under the principles announced in *Bruton*, the Confrontation Clause prohibited this kind of compelled inference from a nontestifying codefendant's statement. *See id*. ("By naming Schwartz's corporations after the jury had heard lengthy testimony regarding the extent of Schwartz's ownership and control of them, the codefendant statements compelled an inference against Schwartz even more forcefully than a statement that replaces a defendant's name with a neutral pronoun.").

In this case, the Consent Order is only indirectly inculpatory against Caroni because an inference is required to connect him to Global and Dileo's prescribing practices, but, considering the indictment and all of the government's evidence as thus far presented, the court finds that an inference of guilt on the part of Caroni is compelled from the Consent Order due to Caroni's direct connection with Global, the alleged business relationship between him and Dileo, and Dileo's position with regard to the operation and control of the clinics. Under the government's apparent theory of the case, Dileo is not simply a physician employee of clinics owned and operated by Caroni; instead, he is portrayed as having operated and controlled the clinics along with Caroni. The indictment charges that the defendants joined in a conspiracy to provide purported pain management treatment at "their clinics." (Doc. 3, ¶ 12). The government has maintained no distinctions between the defendants or clinics based on who established each clinic; the indictment charges in

general terms that the unlawful practices occurred "through their clinics;" and the proof tends to link Caroni and Dileo together indiscriminately as the clinics' operators.[5]

The government argues that reference to Global in the affidavit can be redacted to avoid any incriminating inference against Caroni. However, viewing the evidence as a whole, as required by *Schwartz*, the government's theory may be characterized as equating Dileo and Caroni with the clinics due to their personal involvement in operating them. *See Schwartz*, 541 F.3d at 1351-53 (finding a Confrontation Clause violation where the government was relying on the jury to equate the defendant with the corporations named in the codefendant's statement). Also, the clinics that Dileo and Caroni ran all served the same purpose of providing pain management treatment, and redacting the word "Global" would not erase from the juror's minds the fact that – based on the evidence thus far – Dileo and Caroni were operating these clinics together during the time of the prescribing practices set forth in the Consent Order and charged in the indictment. Thus, there is no effective way to redact from the Consent Order Dileo's connection with Global (and thus Caroni) during the timeframe of these alleged prescribing practices. *See Bruton*, 391 U.S. at 129 ("The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds.") (internal marks omitted). The court concludes that although the Consent Order does not refer to Caroni by name, in light of the whole case, it compels an inference of guilt based on Caroni's relationship with Dileo and the fact that they were operating the Global clinics together. Thus, if the Consent Order were admitted, severance would be required to avoid a violation of Caroni's rights under the Confrontation Clause.[6]

The court also finds it necessary to revisit the balance of probative value and the

---

[5] There is also evidence that Dileo worked as a physician at other clinics that he established together with Caroni during the same timeframe as the practices noted in the Consent Order.

[6] At this time, it is less clear that this result would be required with regard to Pastorek. Based on the whole of the evidence presented against him thus far, the court concludes that a limiting instruction could adequately protect Pastorek's rights.

Case No. 3:10cr101/MCR

potential for unfair prejudice in light of the evidence that has been presented thus far. Even assuming the Consent Order does not sufficiently compel an inference of guilt contrary to the principles of *Bruton* and the Confrontation Clause, it is inadmissible hearsay as to both Caroni and Pastorek and its prejudicial value must be closely examined. On reconsideration, the court concludes that admitting the Consent Order against Dileo presents a danger of unfair prejudice to Caroni in light of the evidence now in the record, and discussed above, which substantially outweighs the probative value of this evidence.[7] "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury . . . ." Fed. R. Evid. 403. Rule 403 is an extraordinary remedy that should be used sparingly, and for this reason, evidence is excluded on this basis "only when unfair prejudice substantially outweighs probative value." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008) (internal marks omitted). The Consent Order was entered in March 2008 and the conspiracy alleged in the indictment concluded in February 2008; therefore, it cannot be used against Caroni as proof of knowledge or willfulness, notice of wrongdoing, or proof of an agreement, and a cautionary instruction to this effect would be necessary. On this record, however, the court finds that the danger of confusion and unfair prejudice would limit the effectiveness of a cautionary instruction because the object of the conspiracy alleged is the very act that Dileo, by signing the LSBME Consent Order, admitted could be shown from his own prescribing practices. Also, the evidence now indicates that Dileo and Caroni both were involved in operating the clinics. While civil medical standards may be relevant, there is a danger in this instance that the jury will rely on the Consent Order and investigation of the LSBME, a civil licensing board, to impermissibly draw an inference of Caroni's criminal guilt. Also, the fact that the government seeks to use a willful blindness instruction gives rise to a concern that the jury will impermissibly consider the Consent

---

[7] The Consent Order is inadmissible hearsay as to both Caroni and Pastorek. It is not admissible as a coconspirator's statement because it was not made during the course, or in furtherance, of the conspiracy, which is alleged to have been completed in February 2008, see Fed. R. Evid. 801(d)(2)(E). Nor does it fit into any hearsay exception with regard to Caroni and Pastorek. Again, however, the court believes that a limiting instruction would adequately protect Pastorek based on the evidence in the record at this time.

Case No. 3:10cr101/MCR

Order as proof of notice to Caroni because of the government's theory that Dileo and Caroni both were de facto operators of the clinics. Therefore, even if the evidence is insufficient to compel an inference of guilt in violation of the Confrontation Clause, the court finds that the probative value of the Consent Order is substantially outweighed by the danger of unfair prejudice to Caroni.

In light of the evidence as presented at trial thus far, the court, on reconsideration, concludes that the Consent Order must be excluded from this joint trial. Because the motion to sever is based on the prior admissibility ruling, no grounds appear to justify severance. The motion to sever will be denied.

Accordingly, it is hereby ORDERED that Defendant Dennis M. Caroni's motion to sever (doc. 380), orally joined by Pastorek, is DENIED.

**DONE and ORDERED** this 1st day of November, 2011.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**