UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                          Case Nos.:    3:10cr101/TKW/HTC
                                           3:17cv425/TKW/HTC

DENNIS M. CARONI

---

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Dennis M. Caroni's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF Doc. 710). Caroni's motion raises two grounds for relief.[1] Ground One alleges a *Brady* violation and Ground Two alleges the Government committed fraud on the Court. The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After reviewing the record and the arguments presented, the undersigned recommends that the motion be DENIED without an evidentiary hearing.

---

[1] A third claim, that counsel was ineffective in not challenging the admissibility of the Government expert's opinion testimony was abandoned shortly after the motion was filed. ECF Doc. 714. Additionally, Caroni sought to expand his § 2255 claims through a subsequent *pro se* motion and a motion for leave to file amended supplemental briefing. Both motions were denied by the Magistrate Judge, and objections overruled by the District Judge. ECF Docs. 720, 721, 724, 731, 733, 735.

## I.     BACKGROUND AND PROCEDURAL HISTORY[2]

Caroni was indicted in September 2010, along with other co-defendants, for conspiring to operate "pill-mills" and to launder money through a company owned by Caroni called Global Pain Management, LLC ("Global").  Global was formed in 2004 and operated several clinics in Louisiana, before opening a clinic in Pensacola in 2005.  Caroni was arrested two weeks after the Pensacola clinic opened.  After a multi-week trial, during which Caroni was represented by retained counsel, Edward R. Shohat, Esq., a jury found Caroni guilty of conspiracy to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1) and to commit money laundering.

On February 6, 2013, the Court entered a judgment sentencing Caroni to 36 months of imprisonment on Count One and 240 months on Count Two, to run concurrently.[3]  ECF Doc. 563.  Caroni appealed his judgment, represented by Nathan Dershowitz, and on September 1, 2015, the Eleventh Circuit affirmed Caroni's convictions and sentence.  ECF Doc. 706.  The United States Supreme Court denied certiorari on June 28, 2016.  ECF Doc. 707.  On June 26, 2017, Caroni, through retained attorney William Kent ("Kent") timely filed the instant § 2255 motion.  ECF Doc. 710.

---

[2] For a detailed recitation of the procedural history and facts of this case, see the Eleventh Circuit's 47-page opinion, *United States v. DiLeo*, 625 F. App'x 464 (11th Cir. 2015) or the prior orders of this Court.  ECF Docs. 721, 723, 733, 735.

[3] The Court later reduced Caroni's sentence to 235 months pursuant to 18 U.S.C. § 3582(c)(2). ECF Doc. 696.  The reduced sentence was within the amended guidelines range.  *See* ECF Doc. 697.

## II.    LEGAL STANDARD

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

## III.    CARONI'S § 2255 MOTION

As stated above, Caroni's § 2255 motion contains two grounds for relief, both of which relate to the Government's corruption investigation of DEA Task Force Agent Donald Nides ("Nides"). The circumstances surrounding Agent Nides' indictment and trial read like a tragic detective novel, and while salacious, have very little to do with Caroni's conviction.

Nides was a New Orleans Police Department Officer, who was also deputized as a DEA Tactical Diversion Task Force Member. ECF 719-2. On February 21, 2014, the Government indicted Nides for conspiring with Tiffany Miller ("Miller") and Dr. Joseph Mogan ("Mogan") to dispense quantities of certain controlled

substances outside the scope of professional practice and not for legitimate medical purposes.  ECF 719-3 at 5, *United States v. Nides*, United States District Court, Eastern District of Louisiana, Case No.: 2:14-cr-00040.    Specifically,  the superseding indictment alleges that from 2004 to March 2008, Nides knew the Omni Clinics (clinics owned by Miller and Mogan) were operating as "pill mills" for drug seekers and abusers and "failed to investigate or refer for prosecution" the clinics, its owners or operators, and "failed to disclose the true nature of the unlawful activities occurring daily" "or his own actions with Miller."  ECF Doc. 719-3 at 12. The superseding indictment further alleges that Miller paid Nides cash and performed sex acts on Nides in exchange for assistance in "attempting to evade law enforcement investigation and prosecution"  ECF Doc. 719-3 at 12.  After Miller and Mogan pled guilty and were set to testify against Nides, Nides took his own life. *See* ECF Doc. 719-1 at 14, docket entries 121-124, 135.

Neither the indictment nor the superseding indictment contain any allegations of wrongdoing related to any work Nides did on the DEA's investigation of Caroni or Global.  Indeed, the only reference to Caroni or Global is an allegation that Nides provided confidential information to Miller regarding a search warrant that was to be executed on a "pain management" clinic managed by Miller's sister that was in competition with Omni.  ECF Doc. 719-3 at 14.  That clinic was Caroni's clinic, Global.  ECF Doc. 719-3 at 20.

Caroni claims he personally met with Nides in 2007 to review procedures for Global and to ensure it was operating in compliance with the law, including turning over "300 plus files" and "review[ing] Global's operations with Nides." ECF Doc. 710 at 10. He claims Nides used the information to build a case against Caroni and divert law enforcement attention from the competing clinics. According to Caroni, Nides "needed to divert attention from the clinics he was protecting and needed a fall guy, which is where Global and Caroni came in," to "maintain the cover that he was actively working to develop a case against illegal pain clinics" while also "eliminating his mistress' primary competition." ECF Doc. 710 at 11. Caroni maintains that evidence of Nides' corruption would have created a reasonable doubt in the jury's mind about the wrongdoing at Global. He also contends that had the Government disclosed this evidence to the defense, Caroni would have been able to negotiate a favorable plea agreement, and he "would have been prepared and willing to enter a guilty plea to charges which would have led to a lesser sentence." ECF Doc. 710 at 23.

## IV.    LEGAL ANALYSIS

### A. Procedural Default

It is well settled that a § 2255 petition is a collateral challenge to a judgment, which cannot take the place of a direct appeal. *See, e.g., United States v. Frady,* 456 U.S. 152, 165 (1982). Thus, a defendant must assert all available claims on direct

appeal. *See Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994). Indeed, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States,* 837 F.2d 965, 966 (11th Cir.1988) (quoting *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir. Unit A Sep.1981)).[4] The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ." *Id.*

Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001). In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. *See, e.g., Smith v. Murray,* 477 U.S. 527, 534 (1986); *McCoy v. Newsome,* 953 F.2d 1252, 1258 (11th Cir.1992). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the

---

[4] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

defendant can first demonstrate either 'cause' or actual 'prejudice.'"  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Caroni states the alleged *Brady* violation only became apparent when Nides was indicted in February 2014.  The Government does not appear to dispute that assertion, but nonetheless contends Caroni's claim is procedurally defaulted because the indictment was released while Caroni's case was pending on direct appeal. Caroni contends that because the record on appeal did not include Nides' indictment, he could not have raised this issue on direct appeal.  While Caroni is correct that Caroni's appeal is limited to the record before the appellate court, Caroni's argument fails to consider Federal Rule of Criminal Procedure 33.

Rule 33 allows a defendant to file a motion for new trial based on newly discovered evidence, including a *Brady* claim, within three (3) years of the judgment, even when an appeal is pending.  Fed. R. Crim. P. 33.  The fact that an appeal of the judgment is pending does not divest the district court of jurisdiction over a motion for new trial.  *See United States v. Smith*, 433 F.2d 149, 152 (5th Cir. 1970); *United States v. Khoury*, 901 F.2d 975, 976, n.3 (11th Cir. 1990).  When such a motion is filed, the district court can deny the motion or certify its intent to grant the motion to the appellate court so the appellate court can remand the case.  *See Smith*, 433 F. 2d at 152 ("[t]hat the district court did not have authority to grant a motion for new trial while the case was on appeal does not mean, however, that the

district court did not have jurisdiction to hear the motion"); *United States v. Cronic*, 466 U.S. 648, 666, n.42 (1984) ("The District Court denied that motion [for a new trial under Fed. R. Crim. P. 33] for lack of jurisdiction because the case was pending on direct appeal at the time, but that ruling was erroneous.  The District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case.").

In other words, even assuming that Caroni was unaware of Nides' alleged wrongful conduct until after Nides' indictment in February 2014, he learned of it within 3 years of his judgment and, thus, Caroni could have filed a motion for new trial with the district court and raised these claims, even while his direct appeal was pending.  If the district court denied the motion, then Caroni could have appealed the court's denial.  If the district court was inclined to grant the motion, then the court would have certified its intent to the appellate court and sought remand.  *See United States v. Hays*, 454 F.2d 274, 275 (9th Cir. 1972) ("We point out that where there is an appeal from a judgment of conviction and a later appeal from the denial of a motion for a new trial on the ground of newly discovered evidence, there should be a second appeal, which usually can be consolidated with the original appeal."). Although a Rule 33 motion is not part of the 'direct appeal' from a judgment and, thus, does not toll the one-year time limitation for filing a § 2255 petition under the

AEDPA, it is a part of the direct appeal process once incorporated into the direct appeal under Rule 4(b). *See Barnes v. United States*, 437 F.3d 1074, 1078 (11th Cir. 2006) (citing *Trenkler v. United States,* 268 F.3d 16, 22 (1st Cir. 2001)).

Thus, it appears that Caroni could have raised the issues he now raises in this petition on direct appeal. Indeed, while the appeal was pending, Caroni's appellate counsel reached out to the Government, requesting *Brady* material relating to Nides. ECF Doc. 713-1 at 2. However, whether Caroni was obligated to divert from his pending direct appeal and file a motion for new trial after Nides' indictment, regardless of the status of his appeal, has not been specifically addressed by this circuit. According to the Seventh Circuit, a *Brady* violation presents a constitutional claim which is cognizable under § 2255 and Rule 33, giving a defendant the "option of filing a Rule 33 motion or a *timely* § 2255 motion." *United States v. O'Malley*, 833 F.3d 810, 815 (7th Cir. 2016) (emphasis supplied). Conversely, the Tenth Circuit found a defendant's § 2255 petition procedurally barred because he failed to raise his *Brady* claim based on newly discovered evidenced in a Rule 33 motion. *See United States v. McCullah*, 136 F. App'x 189, 193 (10th Cir. 2005). The *McCullah* court, however, chose to decide the issue on the merits - as will the undersigned.[5]

---

[5] In reluctantly holding that a prisoner was barred from bringing a *Brady* claim on a second habeas petition without meeting the gateway requirements of § 2255(h), even though he could not have discovered evidence of the *Brady* claim with due diligence until after the time for him to file his first habeas petition, the Eleventh Circuit, in *Scott v. United States*, 890 F.3d 1239, 1251 (11th Cir. 2018), recognized the importance of allowing *Brady* claims to proceed on the merits when it stated,

## B. The *Brady* Claim

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). To obtain relief on a *Brady* claim, a defendant must establish "(1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *Ponticelli v. Sec'y, Florida Dep't of Corr.*, 690 F.3d 1271, 1292 (11th Cir. 2012) (citation omitted).

### 1. Failure to Identify any *Brady* Evidence.

Here, Caroni fails to establish any of the elements of his *Brady* claim. Namely, he has failed to identify any evidence favorable to him that was possessed by the Government and not disclosed to him. Rather, his entire claim is based on his speculative belief that the Government must have found something in its investigation of Nides that is favorable to his case. *See* ECF Doc. 719 at 4 ("[t]he Government fails to confess to the Court when and what it knew"). A *Brady* claim cannot rest on such speculation. *Smith v. United States*, 627 F. App'x 852, 855 (11th

---

"imprisoning someone based on the results of an unfair trial and then precluding any remedy at all might well work a suspension of the writ of habeas corpus."

Cir. 2015) ("Although Smith now asserts that Dyson's tenuous references to Bird and Shorty Mark demonstrate that the government knew of Dyson's participation in the information-for-sale scheme, he does not allege facts supporting this conclusion, and the District Court was not required to hold an evidentiary hearing based upon his own speculative generalizations.").

Along with his habeas petition, Caroni filed a "Request Pursuant to *Brady/Giglio/Kyles* that the Government disclose all information available to the Government relating to Former DEA Task Force Agent Donald Nides." ECF Doc. 711. The request sought "all information in [the Government's] possession or which it can obtain from inquiry of the United States Attorney for the Eastern District of Louisiana and which it can obtain by inquiry of all law enforcement agencies involved in the investigation and prosecution of Caroni and Nides." ECF Doc. 711 at 1. The request also sought all information relating to the Government's investigation of any terminated officer who worked on Caroni's investigation or case. ECF Doc. 711. Magistrate Judge Kahn denied the request as overly broad and a "fishing expedition." ECF Doc. 715 at 2-5.

Indeed, despite the filings in Nides' case being publicly available, including Miller and Mogan's pleas and factual bases, Caroni has failed to identify one single piece of evidence he believes the Government has that would be favorable to him. Caroni has not identified any *Brady* evidence, nor can he, because a review of the

filings in Nides' case shows that Nides' wrongful conduct had nothing to do with the Government's case against Caroni. Nides' indictment was based on his failure to investigate or refer for prosecution Miller's pill mill activities; his protection of Miller and her pill mills and the disclosure of confidential information to Miller, in exchange for cash and sexual favors. The only tangential reference to Caroni's clinic, Global, in Nides' case is that Nides disclosed to Miller that the DEA was going to search Global – a disclosure he made because Miller's sister was a manager at Global. Caroni acknowledges this glaring deficiency in his petition and agrees "Caroni cannot specify what the Government knew or was investigating and when the Government knew it." ECF Doc. 710 at 17, 25. Caroni's failure to establish that the Government possessed any information favorable or material to him in its investigation of Nides is fatal to his *Brady* claim.

Moreover, Nides was not called by any party as a witness and his name was barely mentioned at the lengthy trial.[6] As Magistrate Judge Kahn noted when he denied Caroni's request for disclosure of *Brady* information, it was the defense, not the Government, who elicited testimony from a witness regarding Caroni's

---

[6] *See* ECF Doc. 651 at 260-265 (Caroni's cross-examination of DEA Agent Alan Clesi about his recollection of meetings at Global involving Caroni and Nides, and paperwork provided to Nides and Clesi about "discharged" Global patients); ECF Doc. 653 at 15-18 (Caroni's cross-examination of Alan Clesi about patient information forms of patients allegedly abusing the clinic provided by Caroni to Nides); ECF Doc. 664 at 75-79 (Caroni's cross examination of Agent John Johnson about the lack of information received from a confidential informant working at Global, and Nides' failure to inquire about wrongdoing at the clinic).

interaction with Nides – and, that was done "to show that Defendant was trying to ensure that his pain clinic was operating 'by the book,' as well as the fact that Nides never received any information from the confidential informant working at Defendant's clinic about any irregularities there."  ECF Doc. 715 at 3.  Thus, any information regarding Nides' credibility would be immaterial.  *See LeCroy v. Secretary, Florida Dept. of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005).

Caroni states in his petition that "had Caroni known that Nides was corrupt, Caroni would never have spoken with him nor would Caroni have turned over any evidence to Nides."  ECF Doc. 710 at 11.  Caroni contends, however, that he met with Nides in 2007 and 2008 – before Caroni had been indicted.  Therefore, even if the Government was aware of Nides' corruption at that time and even if that constituted *Brady* evidence, the Government was not required to disclose any information regarding Nides to Caroni at that time.

Caroni also argues that if he had known about Nides' corruption, he would have handled his trial differently.  Namely, he would have argued that Nides was using Caroni as a scapegoat to protect his relationship with Miller and his own corruption.  Caroni's argument fails on two points.  First, the Government did not rely on any information it obtained from Nides in Caroni's trial.  ECF Doc. 716 at 7, n 3; ECF Doc. 719 at 7, n. 4.  Second, even without knowledge of the Government's investigation into Nides, Caroni knew prior to his arrest that Nides

was possibly having an affair with Miller and thus, had enough information to make those arguments at his trial.  Indeed, Caroni admits in his petition that "[s]ometime during the summer of 2010," Caroni learned from Miller's husband that he believed Miller was having an affair with Nides.  ECF Doc. 710 at 13.

### 2.  Failure to Establish Materiality

Even assuming that Caroni's generalized allegation that evidence of Nides' corruption constitutes *Brady* evidence, his claim would still fail because he cannot show that any such evidence was material.  "Evidence would be 'material' if it is reasonably probable that a different outcome would have resulted if the government had disclosed the evidence. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Ponticelli*, 690 F.3d at 1292.

As stated above, Nides' corruption, other than involving a competitor pill mill, had no relationship to the Government's evidence against Caroni.  Thus, it is not reasonably probable that a different outcome would have resulted for Caroni had the government disclosed Nides' corruption.  This is particularly true given the amount of evidence presented against Caroni.  As the Eleventh Circuit stated in affirming Caroni's judgment and sentence, "the evidence of [defendant]'s guilt was strong." *DiLeo,* 625 F. App'x at 474.  That evidence included the following:

- Testimony from numerous patients and former employees that Global prescribed drugs to patients with limited or no physical examination by a doctor and regardless of whether patients had an addiction or abuse problem

- The number of patients the doctors saw each day was very large

- Patients were offered bonuses for referrals

- Patients' dosages were increased upon request, rather than on need and even if drug screening indicated they were taking street drugs

- Testimony from employees that Caroni said what patients did with the drugs after they left was not his business or concern

- Patients were selling some of the drugs prescribed and Caroni was aware of this

- Patients were charged fees based on type and strength of drugs

- Testimony from former staff members that about 3/4ths of patients were there to support their addictions

- A doctor who moved his family from California to take a position with Global walked away from a salary of $500,000 because he thought the operation was a pill mill

*See id.* at 474-75.

Accordingly, the undersigned finds that Caroni's petition based on a *Brady* violation is unfounded. *Smith*, 627 F. App'x at 855-56 (holding that district court did not err by denying defendant's § 2255 motion without an evidentiary hearing where the allegedly undisclosed information would not have impacted the jury's verdict, as it was unrelated to the events surrounding his conviction and there was other evidence in the record demonstrating his involvement in the crime).

### C. Government's Alleged Fraud on the Court

In Caroni's second ground for relief, he asserts the Government committed a "fraud on the court" when it submitted a pre-trial affidavit signed by Nides and, thus, impliedly vouched for the affidavit's truthfulness despite its investigation of and knowledge of Nides' corruption. The affidavit in question was filed in a response to a court order (ECF Doc. 216) after a hearing on Caroni's Amended Motion to Produce Evidence Favorable to the Accused (ECF Doc. 136) and his Supplemental Amended Motion seeking the identity of a confidential DEA Source (ECF Doc. 189). Caroni argued to the district court that he was entitled to disclosure of the identity of a Source of Information ("SOI") identified in a 2006 report prepared by Nides. Although the Government did not believe that it was required to provide the information requested, the Government also advised the court that Nides told the Government's counsel he did not know and could not remember the names of the SOI(s), and that Caroni's request to conduct a deposition of Nides on that issue was improper. ECF Doc. 212 at 1. The Court accepted the Government's representation that Nides was unable to identify the SOI, but required, out of an abundance of caution, that Nides provide an affidavit on the issue of the identity of the SOI as well as any other notes he had pertinent to the SOI. *Id.* at 3.

Nides' May 16, 2011, affidavit reflected that he was unable to identify the SOI with whom he had spoken over five years earlier, "even if ordered by the court

to do so." ECF Doc. 219 at 3. He averred that he neither was in possession of, nor knew of, any notes or other documents that might provide information leading to the SOI's identity, and he explained that his customary practice was to discard any handwritten notes after completing a DEA-6 report of information provided by a SOI. *Id.* at 3-4.

Caroni argues the Government committed "fraud on the court" by presenting Nides' affidavit to the Court, knowing that an investigation was underway regarding Nides' corruption. Caroni does not cite a legal basis for his assertion. However, Federal Rule of Civil Procedure 60(d)(3) provides that a court may "set aside a judgment for fraud on the court." An action for fraud on the court is available only to "prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). Fraud on the court must be established by clear and convincing evidence, and generally, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Gupta v. U.S. Att'y Gen.*, 556 F. App'x 838, (11th Cir. 2014) (citations omitted); *see also Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (fraud on the court is fraud which "attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases"); *Booker v. Dugger*, 825 F.2d 281, 283-84 (11th Cir. 1987) (fraud

on the court must be proven by clear and convincing evidence rather than conclusory averments or statements made on "information and belief"); *United States v. Sylvester*, Case 3:06cr460/MCR, 2014 WL 12884519 (N.D. Fla. June 9, 2014).

Caroni, however, has offered this Court nothing more than "conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief…." *Booker*, 825 F.2d at 284. Such speculation does "not serve to raise the issue of the existence of fraud...." *See id.*

Moreover, Caroni has not presented any evidence, much less clear and convincing evidence, to show that the affidavit contained any false information or that the Government believed any information to be false. *See Gupta,* 556 F. App'x at 841 (holding that district court did not abuse its discretion in denying Rule 60(b)(3) motion based on fraud on the court where "[defendant]'s allegation that the government presented a perjured affidavit is at best tenuously supported by the documents [defendant] presented to the district court, and the remainder of the allegedly fraudulent conduct amounts to mere nondisclosure"). The fact that Nides was indicted on corruption charges for protecting Miller's pill mills does not necessarily mean that Nides lied in the affidavit or that the Government was aware of any such lies. *See United States v. Burke*, 321 F. App'x 125, 126 (11th Cir. 2009) (affirming dismissal of § 2255 motion based on fraud on the court on finding that

petitioner's "proffered evidence did not establish that the prosecution intentionally permitted or condoned the lying" and thus petitioner "failed to present 'clear, unequivocal and convincing evidence' of an intentional fraud on the court by the federal prosecutors").

For the same reasons as set forth above, the undersigned is also not persuaded by Caroni's reliance on *Napue v. People of State of Ill.*, 360 U.S. 264 (1959). Caroni contends that the Government violated his constitutional rights by presenting Nides' affidavit to the Court. Caroni's reliance is misplaced because, unlike the facts in *Napue*, there is no evidence (1) Nides' affidavit contained any false statements; and (2) that the Government knew the information to be false. Moreover, in *Napue*, the State used false evidence, which the State knew to be false, to obtain a conviction. Here, Caroni was convicted because the Government's evidence, which did not include any testimony or evidence from Nides, and certainly not the disputed affidavit, was "strong." *See DiLeo*, 625 F. App'x at 474.

### D. Caroni's Request for an Evidentiary Hearing

Caroni requests an evidentiary hearing if summary relief is not granted on his claims. The undersigned finds, however, an evidentiary hearing is unnecessary because "the motion and files and records conclusively show [Caroni] is entitled to no relief." See 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). To be

entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). Here, as set forth above, Caroni's arguments are simply not supported by the record.

## V.    CONCLUSION

For the foregoing reasons, the undersigned finds Caroni has failed to show the claims raised in his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Therefore, the undersigned recommends Caroni's motion be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is

also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The Motion to Vacate, Set Aside or Correct Sentence (ECF Doc. 710) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**